# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

VICTORIA PAGE AS ADMINSTRATRIX OF THE ESTATE OF MARK PAGE, and VICTORIA PAGE AS WIFE OF MARK PAGE, DECEASED, and VICTORIA PAGE IN HER OWN RIGHT,

        Plaintiffs,

        v.

PASQUALE FUCCI, M.D. and BRANDYWINE MEDICAL ASSOCIATES,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. N15C-04-087 CLS

Date Submitted: September 20, 2018
Date Decided: September 27, 2018

On Plaintiff's Motion Compel Production of Physician's notes of Preet Joshi, M.D., Pasquale Fucci, M.D., and the note of office manager Erika Mutter, **GRANTED**.

Adam R. Elgart, Esquire, Mattleman, Weinroth & Miller, P.C., 200 Continental Drive, Suite 215. Newark, Delaware, 19713. Attorney for Plaintiffs.

Thomas J. Marcoz, Esquire, Marshall Dennehey Warner Coleman & Goggin, 1007 N. Orange St., Suite 600, Wilmington, Delaware, 19899. Attorney for Defendants.

**Scott, J.**

1

## Issue

Are the notes taken by an office manager and two doctors in response to a phone call from a wife who describes an adverse reaction of her husband, subject to being produced when Defendants claim the notes are work product?

## Background

This is a medical malpractice and wrongful death action. Mark Page began seeing Defendant, Dr. Fucci on April 11, 2014 for outpatient drug addiction treatment. Mr. Page was prescribed Suboxone as part of this treatment. Sometime after being administered Suboxone, Plaintiff contacted Defendants' answering service. The on-call physician Dr. Joshi returned that call and had a conversation about the administration of Suboxone. The next day, on April 12th Mr. Page was taken to Christiana Hospital and passed away on April 15th. The complaint alleges Dr. Fucci was negligent in prescribing Suboxone to Mr. Page and failing to monitor its effects on Mr. Page.

Plaintiff (Mr. Page's spouse and adminstratrix) contacted Dr. Fucci's practice manager and stated her husband's death was senseless, that she was seeking her husband's medical records, intended to review those records, and would get an attorney. Plaintiff's deposition testimony indicates she could not recall specifically stating she intended to hire an attorney, but that it was something she would say out

2

of anger. As a result of this conversation the practice manager and Drs. Fucci and Joshi recorded their recollection of the events that had transpired. Dr. Joshi has stated that these notes were not taken as part of a protocol, nor were similar notes taken within the ordinary course of business. It is undisputed these notes were taken without the advice and consent of an attorney representing Defendants.

Plaintiff has moved to compel the production of these notes as part of their discovery. Plaintiff contends that as these notes were taken without the advice and consent of an attorney they fall outside of the protection of the work product doctrine. Defendant answers that these notes fall within the protection as they were prepared in preparation for litigation.

**Analysis**

Under Superior Court Civil Rule 26, parties may generally obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.[1] Material prepared by or for an attorney in anticipation of litigation generally fall within the work product doctrine as articulated by the United States Supreme Court in *Hickman v. Taylor*.[2] When seeking discovery of material prepared in anticipation of litigation by a party's representative (including the other

---

[1] Super. Ct. Civ. R. 26.
[2] *Hickman v. Taylor*, 329 U.S. 495 (1947).

3

party's attorney, consultant, surety, indemnitor, insurer or agent), the party demanding discovery must show a substantial need for the material, and that the party is unable to discover the information without undue hardship.[3]

However, "core or opinion work product that encompasses the mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation is generally afforded near absolute protection from discovery."[4]   A party asserting the work product privilege bears the burden of establishing that the documents he or she seeks to protect were prepared "in anticipation of litigation."[5]   To determine if a document meets this test the Third Circuit stated "only by looking to the state of mind of the party preparing the document or, as here, the party ordering preparation of the document, can we determine whether this test has been satisfied."[6]   Both the Third Circuit and this Court have required the preparer's anticipation be reasonable.  This Court held in *Cont'l Cas. Co. v. Gen. Battery Corp.,* and the Third Circuit both looked to Professors Wright and Miller who articulated:

> Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the

---

[3] Super. Ct. Civ. R. 26.
[4] *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003). (internal quotations omitted)
[5] *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000)
[6] *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993)

4

particular case, the documents can fairly be said to have been prepared or obtained because of the prospect of litigation.[7]

In *Cont'l Cas. Co. v. Gen. Battery Corp.,* the action arose from General Battery's environmental liability nationwide for which Continental sought a declaration of its rights and obligations. The Court did not accept that all documents produced after Defendant became aware of potential liability were created in anticipation of litigation. Nor did the Court accept that defendants did not "anticipate litigation" until just prior to the commencement of the action.[8] Ultimately the Court required an in camera review of documents so that a factual analysis could be made and the five-part test adopted in *Mullins v. Vakili* applied.[9]

This Court has adopted the five-part test laid out in *Mullins* to determine if documents were created in anticipation of litigation:

> First, courts should consider the nature of the event that prompted the preparation of the materials and whether the event is one that is likely to lead to litigation.... Second, courts should determine whether the requested materials contain legal analyses and opinions or purely factual contents in order to make inferences about why the document was prepared. Third, courts should ascertain whether the material was requested or prepared by the party or their representative ... [W]hen litigation is anticipated it is expected that an attorney or party will [have] become involved. Fourth, courts should consider whether

---

[7] *Cont'l Cas. Co. v. Gen. Battery Corp.*, 1994 WL 682320, at *6 (Del. Super. Ct. Nov. 16, 1994) Citing 8 Wright and Miller, *Federal Practice and Procedure*, § 2024 (2d ed. 1982).
[8] *Cont'l Cas. Co. v. Gen. Battery Corp.*, at *6.
[9] *Mullins v. Vakili*, 506 A.2d 192.

the materials were routinely prepared and, if so, the purposes that were served by that routine preparation ... Last, courts should examine the timing of the preparation and ascertain whether specific claims were present or whether discussion or negotiation had occurred at the time the materials were prepared.[10]

The items sought to be discovered by Plaintiff in *Mullins* were notes taken subsequent to receiving a letter from Plaintiff's attorney indicating his representation related to a medical malpractice action. To properly apply the *Mullins* test the Court must consider the facts of each case.[11]

In its analysis of the first part of the test in the *Mullins* case the Court reasoned that the initiating event for the creation of the notes was the notification that Plaintiff was represented by an attorney as opposed to having been created in response to the event itself. The Court found "While an accident or injury […] may not necessarily lead to litigation […] when an attorney notifies a doctor two months after an incident out of which a claim arises that he represents the doctor's patient, it may be reasonably inferred that litigation of some sort is likely."[12] In *Mullins*, the event that prompted the preparation of the documents was a letter from Plaintiff's representative.

---

[10] *Mullins v. Vakili*, at 198.
[11] *Id*.
[12] *Id*.

Further application of the *Mullins* test in *Mancinelli v. Delaware Racing Association,* determined that documents prepared during the investigation of a slip and fall accident by an insurance company were primarily prepared as a result of the accident giving rise to the action.[13] These records, the Court found, were created in the ordinary course of business, and not in anticipation of litigation. The Court did withhold certain portions of the materials finding those pages contained legal analysis and warranted protection.[14]

After an *in camera* review of the notes sought to be discovered, the application of the *Mullins* test favors allowing discovery. First, looking at the nature of the event that prompted the preparation of the notes in question. Similar to *Mullins,* the triggering event was the first contact. In *Mullins,* it was the letter, here it was a phone call by the Plaintiff. Unlike *Mullins,* Defendant was not an attorney, and had not retained an attorney.

Secondly, the Court must determine whether the requested materials contain legal analyses and opinions or purely factual contents in order to make inferences about why the document was prepared. The notes in question were prepared by the on-call physician, the office manager, and the treating physician. The notes contain factual observations related to the phone call, the care received and the conversation

---

[13] *Mancinelli v. Delaware Racing*, 2014 WL 1267572.
[14] *Id.* at *2.

between the parties. There are no impressions of counsel included, and the notes do not show any indication litigation was anticipated.

Third, the Court must ascertain whether the material was requested or prepared by the party or their representative. Here, he notes were prepared at the request of the office manager, and without a request by counsel.

Fourth, the Court must consider whether the materials were routinely prepared and, if so, the purposes that were served by that routine preparation. Although the notes were specially prepared, they appear to be typical physician's notes taken in the ordinary course of business. The notes appear to present a record of the care provided to a patient, not unlike any other physician's notes contained within any ordinary patient's records.

Finally, the Court must examine the timing of the preparation and ascertain whether specific claims were present or whether discussion or negotiation had occurred at the time the materials were prepared. While the notes were prepared after it became apparent Mr. Page suffered an adverse reaction, they were prepared before any discussions between the parties or their representatives began in earnest.

8

For the forgoing reasons, Plaintiff's Motion to Compel Production of Physician's notes of Preet Joshi, M.D., Pasquale Fucci, M.D., and the note of office manager Erika Mutter is **Granted**.

**IT IS SO ORDERED.**

/s/ Calvin L. Scott

**Judge Calvin L. Scott, Jr.**